[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 11-12013

————————

D. C. Docket No. 6:07-cv-01785-GAP-KRS

MAHALA AULT,
on her own behalf and on behalf of all others similarly situated,
STACIE RHEA,
on her own behalf and on behalf of all others similarly situated,
DAN WALLACE,
on his own behalf and on behalf of all others similarly situated,

Plaintiffs-Appellees,

JERRY MILLER,
DISABILITY RIGHTS ADVOCATES FOR TECHNOLOGY,
DANIEL M. GADE,
ALAN A. MACCINI,
JAMES F. OVERBY,

Intervenor Plaintiffs-Appellants,

JERRY KERR,

Interested Party-Appellant,

versus

WALT DISNEY WORLD CO.,

Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(August 30, 2012)

Before DUBINA, Chief Judge, JORDAN and ALARCON,[*] Circuit Judges

DUBINA, Chief Judge:

This appeal is brought by objectors to the district court's approval of a class

action settlement.  The underlying case involves allegations that Appellee Walt

Disney World Company ("Disney") is violating Title III of the Americans with

Disabilities Act, 42 U.S.C. § 12182, *et seq.* ("Title III"), by implementing a policy

that bans the use of two-wheeled vehicles, including Segways®, by customers

within its parks and hotels, without exception.  The district court certified a

settlement-only class and found that the settlement reached between the class

representatives and Disney was fair.  Objectors appeal both of these orders,

arguing that (1) class certification is inappropriate under Federal Rule of Civil

Procedure 23; and (2) the district court abused its discretion by approving the

settlement agreement after an extensive fairness hearing.  We conclude that there

was no abuse of discretion and affirm the district court's orders.

---

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

2

**I.**

Disney has a policy that bans the use of all two-wheeled vehicles in all of the parks and hotels within its Walt Disney World Resort and Disneyland Resort (collectively "Disney Resorts").  The ban effectively prohibits the use of Segways®[1] and has no exceptions, even for those with disabilities.  On November 9, 2007, Mahala Ault, Stacie Rhea, and Dan Wallace (collectively "class representatives") brought a class action suit against Disney on behalf of past and future Disney customers who have a mobility disability and rely upon a Segway® for mobility assistance.  The class action suit alleges that Disney's policy violates Title III and seeks an injunction directing Disney to permit the use of Segways® within Disney Resorts.

A year later, the parties entered into a class-wide settlement agreement. According to the terms of the settlement, Disney will maintain its ban on Segways® and, in return, will develop a four-wheeled, electric-stand up-vehicle ("the ESV") for those for whom a stand-up mobility device is a necessity and who are unable to utilize a mobility device that requires sitting, such as an electronic wheelchair or motorized scooter.  The settlement agreement also includes a

---

[1] Because the only two-wheeled vehicle mentioned in this case is the Segway®, we refer to Disney's policy as a ban on Segways®.

3

nationwide waiver of declaratory or injunctive claims relating to Disney's policy. Upon review of the settlement, the district court granted conditional class certification and preliminarily approved the settlement.

Following the district court's approval of the settlement and dispersal of the required class notice to individual class members and to members of organizations that support people with mobility disabilities, several parties filed objections to the settlement. The objectors include Appellant Disability Rights Advocates for Technology ("DRAFT"), the United States Department of Justice (DOJ), which filed an amicus curiae brief in this appeal, 23 State Attorneys General, and others (collectively "objectors").

After receipt of the objections, the district court conducted a fairness hearing to hear the objectors' challenges. At the hearing, Disney's Chief Safety Officer, Greg Hale, presented evidence that allowing customers to bring Segways® into the Disney Resorts would pose a significant safety risk to other guests. Disney also presented evidence that the ESV was a beneficial substitute. In rebuttal, the objectors presented testimony of people with severe mobility disabilities—from amputations to neurological disorders—for whom, objectors insist, using a Segway® is necessary and operating the ESV is impossible.

After conducting the fairness hearing, the district court vacated its prior

4

order conditionally certifying the class and dismissed the case for lack of prudential standing, finding that because all of the named plaintiffs and objectors were able to use wheelchairs or motorized scooters, none had been denied access to Disney's parks.  Class representatives appealed to a panel of this court, which held that the class representatives' interests "are arguably within the zone of interest protected by [Title III]" and remanded the case to the district court for "a determination as to whether the claims of the named plaintiffs are typical of the claims of the class and whether they are adequate representatives of the class." *Ault v. Walt Disney World Co.*, 405 Fed. App'x. 401, 401 (11th Cir. 2010) (per curiam).

Between the district court's dismissal for lack of prudential standing and this court's decision, the DOJ issued a new Title III regulation, 28 C.F.R. § 36.311.  This regulation requires a public accommodation, such as Disney Resorts, to "make reasonable modifications in its policies . . . to permit the use of other power-driven mobility devices" unless Disney can demonstrate that the device "cannot be operated in accordance with legitimate safety requirements."  *Id.* at 36.311(b)(1).

After this court's remand, the district court granted final class certification based upon its prior findings, approved the settlement as fair and reasonable based

5

upon the factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), and overruled all objections.  In determining that the class representatives were unlikely to prevail at trial, one of the *Bennett* factors, the district court made two findings.  First, the district court afforded the new DOJ regulation no deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984) because the court found that "the revised regulations conflict with the plain language of Title III."  [R. 252 at 7.]  Second, the district court found that even if the new DOJ regulation is afforded deference, class representatives are still likely to fail in their claim because of Disney's legitimate safety concerns.  The objectors then perfected this appeal.

## II.

The district court's certification of a class pursuant to Rule 23 is reviewed for abuse of discretion.  *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).  We also review the district court's approval of a class action settlement agreement for abuse of discretion.  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).  "The proponents of class actions settlements bear the burden of . . . demonstrating that the settlement distribution is fair, reasonable, and adequate."  *Id.* (internal quotation marks

6

omitted).

## III.

Objectors first argue that the class does not satisfy the prerequisites to class certification set forth in Rule 23(a), insisting that "the claims or defenses of the representative parties are [not] typical of the claims or defenses of the class[.]" FED. R. CIV. P. 23(a)(3).[2]  Objectors argue that the class representatives' claims lack the required typicality because the class representatives do not rely upon their Segways® for mobility to the same extent as other class members.  For example, Wallace only uses his Segway® once or twice a week, while Ault uses a cane or scooter for help with mobility and infrequently uses her Segway®.  In contrast, according to the objectors, a Segway® for several class members is an absolute necessity for mobility, which makes the claims of these class members sufficiently different from those of the class representatives to defeat class certification.

In the first order granting preliminary class certification, the district court found that the claims of the class representatives are typical because all class members assert that Disney's Segway® ban violates Title III and precludes them

---

[2] Objectors also argue that class representatives are not adequate representatives of the class, FED. R. CIV. P. 23(a)(4), and that the district court improperly certified the class pursuant to Rule 23(b)(2).  We have considered these arguments and find them unpersuasive.  Therefore, we summarily reject them.

7

from using and enjoying Disney's parks to the fullest.  Following this court's remand, the district court found no reason to disturb this previous finding, and we agree.  Class members' claims all stem from the same policy prohibiting the use of Segways® within Disney Resorts, and all claims require analysis of Title III to determine the outcome.  While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.  Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist "a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification."  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278–79 (11th Cir. 2000). This nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  All claims in this class action arise from the same policy—Disney's ban on Segways®—and are all based upon liability pursuant to Title III.  Thus, we conclude that the district court clearly did not abuse its discretion by finding that the claims of the class representatives and class members are typical and warrant class certification.

8

**IV.**

Class actions can only be settled with the approval of the court. FED. R. CIV. P. 23(e). In approving the settlement, the district court must conduct "a hearing and . . . [find] that it is fair, reasonable, and adequate." *Id.* at 23(e)(2). The district court must also find that the settlement "is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotation marks). When the district court initially approved the settlement in the present case, the district court considered the six factors espoused by this court in *Bennett* and found that the class was unlikely to succeed at trial. *See id.* Based upon this finding, the district court looked at the other *Bennett* factors and determined that the settlement agreement afforded at least some relief that was fair and reasonable. *See id.* The district court's initial determination regarding the class's likelihood of success at trial occurred before the DOJ issued the new regulation that requires a public accommodation to modify its policies to permit mobility assistance devices such as Segways® unless the public accommodation determines that such devices cannot be operated safely. 28 C.F.R. § 36.311(b)(1), 36.104. Before the district court and this court, in its amicus brief, the DOJ argues that the regulation alters the landscape of Title III jurisprudence in such a way as to make it likely the class would succeed at trial if allowed to proceed. However, after this court's remand,

9

the district court disagreed with the DOJ and found that even if the new DOJ regulation is afforded deference,[3] Disney's legitimate safety concerns present a significant hurdle to the class's ability to succeed at trial.

The first *Bennett* factor is "the likelihood of success at trial[.]" 737 F.2d at 986. During an extensive fairness hearing before the district court, Hale testified regarding the safety risks posed by the operation of Segways® in Disney Resorts. The very factors Hale considered before deciding that Segways® are too dangerous for operation in Disney Resorts are the very factors facilities are required to consider under the new regulation. *See* 28 C.F.R. 36.311(b)(2)(i)–(v) (requiring a public accommodation to consider the attributes of the device, the volume of foot traffic in the facility, the design and operational characteristics of the facility, whether safety restrictions on the use of the device can mitigate its danger, and whether operation of the device will harm the environment in determining if a specific device is allowable in the facility). The district court found that based upon this testimony Disney is likely to succeed at trial in

---

[3] We acknowledge that the district court also found that the DOJ regulation should be given no deference, finding it to be contrary to Title III. *See Chevron*, 467 U.S. at 843–44, 104 S. Ct. at 2782. However, because we affirm the case on other grounds, we defer answering this question and leave it for another day.

10

showing that it has fulfilled its obligations under Title III.[4]  Objectors and the DOJ would like us to hold that this finding constitutes an abuse of discretion.  We decline to do so.  The issue before us is not who prevails over whom, but rather, the question is whether the district court abused its discretion in its finding regarding who was *most likely* to prevail at trial.  We conclude from the record that there is no abuse of discretion.

The second *Bennett* factor that must be considered is "the range of possible recovery[.]" 737 F.2d at 986.  Class representatives in this class only seek injunctive or declaratory relief; therefore, the class receives either nothing or an injunction requiring Disney to permit Segways® at Disney Resorts.  Because the district court found that class representatives were unlikely to prevail at trial, the district court found that Disney's agreement to produce and make available the ESVs is a beneficial remedy for the class.  This finding does not constitute an

---

[4] Following oral argument, this court was made aware of the recent decision of *Baughman v. Walt Disney World Co.*, No. 10-55792, __ F.3d __ (9th Cir. July 18, 2012), where the Ninth Circuit ruled that Disney was not entitled to summary judgment in a case filed by an individual challenging its Segway® ban because genuine issues of material fact existed.  The Ninth Circuit did *not* hold that Title III requires Disney to permit Segways® in Disney Resorts, and in fact explicitly stated that Segways® can be excluded if Disney determines that the safety factors listed in 28 C.F.R. § 36.311(b)(2) warrant exclusion.  *Baughman*, __ F.3d at __.  In the present case, the district court found that if this action went to trial, Disney was likely to prevail because of its reliance upon those exact safety factors.  Therefore, *Baughman* is factually and procedurally different from the case at bar and does not transform the district court's well reasoned analysis into an abuse of discretion.

11

abuse of discretion.  If Disney prevails at trial, the class will be left with no remedy at all.  This settlement precludes such a Draconian result and ensures that a stand-up mobility device is available at Disney Resorts that conforms to its unique safety requirements.  Therefore, we conclude that the district court's finding that the settlement results in a "fair, adequate, and reasonable" remedy within the range of possible recoveries is also not an abuse of discretion.  *See Bennett*, 737 F.2d at 986.[5]

## V.

After a careful review of the record and with the benefit of oral argument, we conclude that the district court did not abuse its discretion in certifying the class and in approving the settlement.  Accordingly, we affirm its orders.

**AFFIRMED.**

---

[5] We also summarily reject objectors' arguments regarding the nationwide waiver of claims included in the settlement agreement.